[Crim. No. 28483. Second Dist., Div. Four. Sept. 1, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON MICKEY HARRIS, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Defendant, Ramon Mickey Harris, was convicted of grand theft and of two counts of attempted robbery of the

first degree. He also was found guilty of using a firearm during the attempted robberies. This is an appeal from that conviction.

The first of two incidents involved in the present case occurred on August 30, 1975. Defendant and an accomplice stole a 1974 Chevrolet Camaro after robbing the car's owner and her companions.

An hour and 15 minutes after the car theft, Joe Val. and a female companion were walking towards their cars which were parked outside a Baldwin Park restaurant. A 1974 Camaro pulled alongside and two of its occupants got out. One of the men, armed with a handgun, told the couple they were being robbed. Val and his friend were ordered to hand their belongings to the assailants who repeatedly threatened to shoot if the couple failed to obey. However, instead of complying, Val responded, "Go ahead and shoot." The series of events which followed culminated in the defendant telling his armed companion to "crack him (Val) over the head with the pistol." When Val replied he was willing to "take on" both men, the two ran back to the Camaro and drove off.

On November 20, 1975, a four-count information was filed by the District Attorney of Los Angeles. As a result of the automobile theft, defendant was charged in counts I and II, respectively, with grand theft (Pen. Code, § 487, subd. 3) and with the unlawful taking of an automobile (Veh. Code, § 10851). In connection with the Baldwin Park series of events, defendant was charged in counts III and IV with two counts of attempted robbery (Pen. Code, §§ 664 and 211). Each of the latter counts also included a firearms use allegation. The public defender was appointed to represent the defendant who pled not guilty to the allegations.

The case was called on January 21, 1976, and jury selection was begun. On January 22, the defendant presented a motion to be permitted to represent himself. The motion was denied.

Trial was by jury. At the close of the People's case-in-chief, defendant moved to have the firearms use allegations stricken from counts III and IV. The motion was denied.

The case was submitted to the jury on February 11, 1976. After a five-day recess, the jury concluded its deliberations upon returning on the 17th. Defendant was found guilty as charged concerning counts I, III,

and IV, and not guilty as to count II.[1] The use allegations of counts III and IV were determined to be true.

Defendant was sentenced to state prison for a term prescribed by law.

Defendant appeals on the following grounds: (1) he argues it was error to deny his request that he be permitted to represent himself; (2) he contends it was error to allow the jury to be separated for five days; (3) the court erred in refusing to strike the use allegations from counts III and IV; (4) he argues the court erred in not ordering a diagnostic study pursuant to Penal Code section 1203.03.

I

Defendant's primary contention on appeal is that the court erred in denying his motion to represent himself. The trial judge denied the request on the grounds that the motion was not timely made and that defendant moved for a continuance and was not prepared to proceed with the trial on his own behalf, as he lacked sufficient knowledge of the facts of the case. Defendant argues these are insufficient grounds for refusing to grant his request.

In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], the United States Supreme Court held that a defendant in a state criminal trial has a constitutional right to represent himself if he chooses to do so. Defendant argues that denial of his motion violates this rule. *Faretta,* however, involved a motion made well before the commencement of trial and therefore timeliness of the request was not an issue in that case. Defendant, nonetheless, argues on appeal that untimeliness is not a sufficient basis for denial of the motion.

Defendant relies on *In re Connor* (1940) 16 Cal.2d 701 [108 P.2d 10], for the proposition that a motion for self-representation should be granted if made at the start of trial. *Connor* dealt with whether a criminal defendant, who had indicated at the time of arraignment that he did not want an attorney, had effectively waived his right to representation by counsel. That case was not concerned with a motion to substitute out appointed counsel and proceed in propria persona. In fact, *Connor* was decided at a time when the constitutional right of self-representation had

---

[1]The jury was instructed, "Defendant may be found guilty of only one of the crimes charged" in counts I and II, "not both." "If you find him guilty as charged in either of the two counts, you must find him not guilty of the other."

not yet been recognized in this jurisdiction. (See *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489].) In the instant case, the motion was introduced after the trial commenced.

In *People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187], our Supreme Court specifically addressed the issue now before us and concluded that defendant's right to self-representation is not unlimited unless it is asserted at the appropriate time. The court held in *Windham,* that a criminal defendant choosing to represent himself, should invoke that right within a reasonable time prior to the commencement of trial. ██ If the defendant makes his election at the proper time, then the trial court is compelled to grant the request upon ascertaining that defendant's decision was "voluntarily and intelligently" made. However, once the trial has begun, defendant's right to proceed in propria persona is "sharply curtailed." (*United States* v. *Denno* (2d Cir. 1965) 348 F.2d 12, 15, cited in *People* v. *Windham, supra.*) Thereafter, it is "within the sound discretion of the trial court" to deny the motion after inquiring into the specific factors underlying the request. ██ Among the factors to be weighed by the court in reaching its decision are "the reasons for the request, the quality of counsel's representation, the length and stage of the proceedings, the disruption and delay which might be expected if the request is granted, and defendant's prior proclivity to substitute counsel." (*People* v. *Windham, supra.*) The prejudice to defendant's legitimate interests must outweigh the potential disruption of the proceedings, "and considerable weight is to be given the trial court's decision." (*United States* v. *Denno, supra,* as cited in *People* v. *Windham, supra.*)

██ In the present case defendant's interests were not prejudiced by the denial. The record reveals defendant's primary motivation in seeking self-representation was his concern that he would not have access to certain evidence. The court informed the defendant that such evidence was available to him through his attorney who, the court assured him, was competent to carry the case. It may be noted in that connection, that the defendant specifically stated the motion was not brought because of any dissatisfaction with counsel's performance.

Had defendant's motion been granted, though, the defendant's interests would have been jeopardized if the trial were to continue, uninterrupted, at that time. Defendant's responses to questioning by the court revealed an almost total lack of preparation regarding his case. In fact, it was precisely because defendant felt he had not yet seen many of the documents pertaining to the case, that he made his request for

self-representation. A substantial delay would have been necessary to give the defendant adequate time to prepare his defense and thereby assure himself a fair trial. Defendant, himself, had suggested three weeks would be necessary to accomplish this result. However, on appeal, defendant now contends that the seven days that elapsed between the introduction of the motion and the start of testimony would have been sufficient to cure any deficiencies in his knowledge. Defendant's request for a three-week continuance at the time the motion was presented, suggests he did not then feel that seven days would be adequate. Nor was there any reason to believe, at the time, that testimony would not begin until seven days later.

The ruling of the lower court must be considered in light of the circumstances as they existed at the time. When defendant first asked to be permitted to represent himself, the trial was already in progress and the court was not required to disrupt the proceedings in order to accede to defendant's late request.

One further argument is put forth by defendant in support of his belief that the denial violated *Faretta*. It is suggested that the court violated *Faretta* by relying on defendant's lack of legal knowledge in refusing to grant the motion. Though the only expressed grounds for denial were the untimeliness of the motion and defendant's inability to proceed in propria persona at that time, defendant contends the court nonetheless implicitly relied on this factor in reaching its decision. Defendant argues this is demonstrated by the court's questioning of defendant regarding his knowledge of certain legal points.

Although the court did ask certain questions concerning defendant's familiarity with applicable law, this inquiry was posed in the context of enlightening the defendant to the dangers and disadvantages of proceeding propria persona and was therefore consistent with the *Faretta* decision. The court in *Faretta* specifically pointed out that the defendant " . . . should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 582, 95 S.Ct. 2525]; *Adams* v. *U. S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435].)

 Although the defendant is correct in his assertion that legal technical knowledge is irrelevant under *Faretta,* this is true only where

the request for self-representation is made within a reasonable time prior to the start of trial. *(People* v. *Windham, supra.)* Once the trial has begun, it is for the trial court to determine whether the motion should be granted, and the language of *Windham*—"among the factors to be considered [by the court] are . . ."—suggests the factors specified therein were not intended to be exclusive. Furthermore, on the facts of the instant case, the court reasonably could have concluded that defendant's lack of knowledge regarding the substantive and procedural aspects of his case was relevant in assessing the delay that might be necessary if the motion were granted.

In the present case, defendant did not invoke his right to self-representation until the second day of trial.[2] Failure to request self-representation prior to the commencement of trial constitutes a waiver of the unconditional right to do so. *(People* v. *Windham, supra.)* Accordingly, the decision as to whether to grant defendant's untimely motion was within the sound discretion of the trial court. We find no abuse of that discretion.

## II

Defendant next seeks reversal on the ground that the court erred in permitting the jury to be separated for five days. Jury deliberations were begun at 11 a.m. on Wednesday, February 11, 1976. Shortly after 4 p.m. the court was informed that no verdict had been reached. After admonishing the jury that they were not to discuss the case with anyone, the jury was then excused by the court and instructed to return on Tuesday, February 17th. The recess includes two holidays, Thursday, February 12th, and Monday, February 16th, as well as the weekend of February 14-15.

No objection to the separation was entered during the trial. ▮ Objections that are not raised at the time of trial, generally will not be considered for the first time on appeal. *(Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *Imperial Valley Land Co.* v. *Globe G. & M. Co.* (1921) 187 Cal. 352, 359 [202 P. 129].)

Since counsel failed to object in the lower court to the jury separation, he is precluded from urging this contention on appeal.

---

[2]While, in a civil case, a jury trial commences when plaintiff's counsel makes an opening statement or when the first witness is called, in a criminal case, trial commences when a jury is empaneled or when empanelment of the jury has begun. *(People* v. *Hawkins* (1899) 127 Cal. 372, 374 [59 P. 697].)

# III

Defendant further asserts that the court erred in denying his motion to strike the use of firearms allegations from counts III and IV, and asks that the judgment be modified accordingly. Specifically, he contends the facts of the case do not support the use allegation. We agree.

Penal Code section 12022.5 increases the sentence of any person who uses a firearm in the commission, or attempted commission, of certain enumerated felonies.[3] The proper interpretation of the term "use" has been the subject of some dispute. (See *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306].) After examining the legislative intent in enacting this statute, the Supreme Court in *People* v. *Walker* resolved that the application of section 12022.5 was to be limited to those individuals who personally used a firearm.

In the instant case, although defendant's accomplice was armed, defendant himself was not personally in possession of a firearm at any time during the attempted robberies. The *People* suggest the defendant should nonetheless be subject to the additional penalties of section 12022.5 as he aided and abetted in his companion's use of the firearm.

In response to this contention, the court in *Walker,* 18 Cal.3d at page 241, pointed out that "if a statute is intended to impose derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act." Adding that a penal statute is to be construed as favorably as possible to the defendant, the court concluded that, although one may be derivately liable for a crime he does not personally commit, it does not follow that he is also therefore subject to the increased penalties for the manner in which his confederate chooses to commit a crime. Penal Code section 31, which defines

---

[3]Section 12022.5 stated at applicable times: "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, assault with intent to commit murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted,. be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence.

"Upon a second conviction under like circumstances, the additional period of imprisonment shall be for a period of not less than 10 years. . . .

"This section shall apply even in those cases where the use of a weapon is an element of the offense."

principals of the crime to include aiders and abetters of the offense, "does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment ' "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." ' " (*People* v. *Walker, supra,* quoting from *People* v. *Strickland* (1974) 11 Cal.3d 946, 961 [114 Cal.Rptr. 632, 523 P.2d 672], and from *People* v. *Provencher* (1973) 33 Cal.App.3d 546, 550 [108 Cal.Rptr. 792].) The court concluded that a defendant who aids and abets in a crime is not additionally liable under section 12022.5 for his accomplice's use of a firearm. (*People* v. *Walker,* 18 Cal.3d at p. 242.)

■ In the present case, the lower court found that a "person may use a firearm without personally possessing, holding, or wielding it." In light of the *Walker* decision, this ruling was clearly erroneous.

## IV

Defendant's final contention on appeal is that the court erred in not ordering a diagnostic study pursuant to Penal Code section 1203.03, prior to sentencing. There is no merit to this contention.

Section 1203.03 provides, in pertinent part, that the trial court may order the defendant be placed in a diagnostic facility for up to 90 days. Such placement is warranted where the court concludes a diagnostic study is essential to a just disposition of the case. ■ The trial court abuses its discretion in ruling on a particular matter only where such ruling exceeds the bounds of reason. (*In re Carter* (1971) 19 Cal.App.3d 479 [97 Cal.Rptr. 274]; *People* v. *Fusaro* (1971) 18 Cal.App.3d 877 [96 Cal.Rptr. 368], cert. den. 407 U.S. 912 [32 L.Ed.2d 686, 92 S.Ct. 2445].) We hold the trial court did not exceed its discretion in the present case.

The judgment is modified by striking the paragraph relating to the use of a firearm and substituting therefore the words: "Defendant did not use a firearm at the time of commission of the offenses contained in counts III and IV." As so modified, the judgment is affirmed.

Dunn, J., and Jefferson (Bernard), J., concurred.