[Crim. No. 19276. First Dist., Div. Three. June 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ELWOOD PEACE, Defendant and Appellant.

998

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Carol Jean Ryan, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WHITE, P. J.—Appellant appeals from the judgment of the Superior Court of San Francisco County entered after the court found him guilty of a violation of Penal Code section 211 (robbery) and found true the allegation contained in the information that he had inflicted great bodily injury upon the victim who was 60 years of age or older. (Pen. Code, § 1203.09.) Appellant contends on appeal that (1) the trial court in sentencing appellant disregarded the fact that appellant was mentally disturbed; (2) the trial court erred in failing to state its reasons for enhancing his sentence because he had suffered a prior conviction; (3) Penal Code section 1203.09 is unconstitutional; (4) the waiver of a jury trial was invalid; and (5) he is entitled to work time/good time credit.

At approximately 10 a.m. on October 28, 1978, Ms. Doris Peters, then 67 years of age, was returning to her home at 52 Waterville Street in San Francisco from the grocery store. As Ms. Peters approached her house, someone came up behind her and grabbed her purse. The bag of groceries she was carrying fell to the sidewalk. Ms. Peters lost her balance and fell to the ground. Ms. Peters was dragged five or six feet when the purse snatcher attempted to run with the purse while the purse strap was still around her wrist. The attacker fled and Ms. Peters remained on the sidewalk with her purse underneath her. Several minutes later the man returned, pulled the purse from underneath Ms. Peters and fled. The purse contained approximately $60 in cash plus Ms. Peters' credit cards. As a result of the attack, Ms. Peters sustained a broken arm and a bruised pelvis. Ms. Peters testified at trial that appellant resembled her attacker.

Ms. Alma Toso testified that she was inside her house on the morning of October 28, 1978, when she heard a scream. She looked outside her window and observed her neighbor, Ms. Peters, being attacked. Ms. Toso immediately called the police and then went outside to help Ms. Peters. Ms. Toso testified that appellant resembled the attacker, but she could not make a positive identification.

San Francisco Police Officer Donald Sloan testified that on the date in question he and his partner responded to a radio report of a purse snatch at Waterville and Silver Streets. When they arrived at the intersection, they initially saw no one resembling either a suspect or a victim. Thereafter they spotted appellant running several blocks away. The officers stopped appellant and found he was clutching about $60 in his hands.

*Sentencing*

Appellant contends that although the trial judge was repeatedly alerted to the fact appellant was mentally disturbed, he appeared to pay absolutely no attention to that fact at the time of sentencing. Appellant asserts that the trial judge should have obtained a psychiatric report of appellant's condition at the time of the crime and at the time of sentencing. (Pen. Code, § 1203.03.) Appellant further asserts that the trial judge "refused even to discuss defense counsel's request that he recommend to the Department of Corrections that appellant be placed in a psychiatric facility." Appellant therefore urges that the judge failed to

exercise a "sound discretion" and the sentence was not lawfully imposed.

The probation report which the trial judge read and considered contains a good deal of information on appellant's mental condition. The probation officer stated that when she interviewed appellant, he "was quite disoriented and only made a rambling verbal statement." The probation officer had contact with Dr. Bronstein, a psychiatrist for the California Department of Corrections, who had been seeing appellant on an outpatient basis. Dr. Bronstein described appellant "as being an extremely erratic individual who did have passive aggressive tendencies." Dr. Bronstein also indicated that appellant had repressed hostility. Dr. Bronstein stated that appellant had been hospitalized on several occasions. Dr. Bronstein further stated that appellant was impossible to manage on an outpatient basis and that appellant was "not cooperating with psychiatric treatment." Appellant's parole officer described appellant "as being very disoriented and sick." The only factor the probation officer listed as a circumstance in mitigation was that appellant "is suffering from a mental condition that significantly reduces his culpability for the crime."

Defense counsel did not request that the trial judge obtain a psychiatric report before sentencing appellant. At the sentencing hearing defense counsel stated that appellant "is a rather disturbed man" and asked the trial judge to recommend that appellant be placed in a psychiatric facility within the Department of Corrections.

Penal Code section 1203.03 provides that the trial court may order a defendant placed in a diagnostic facility for up to 90 days. Such placement is warranted where the court concludes a diagnostic study is essential to a just disposition of the case. (*People* v. *Harris* (1977) 73 Cal.App.3d 76, 85 [140 Cal.Rptr. 697].) In the instant case the trial judge had before him a great deal of information on appellant's mental condition. Given this fact, the trial judge did not abuse his discretion in not obtaining another psychiatric report. (*Id.*; *People* v. *Nelson* (1967) 257 Cal.App.2d 282, 285-286 [64 Cal.Rptr. 801].)

We must assume that the trial judge properly considered all the information before him. (Evid. Code, § 664.) The fact that the trial judge used his discretion in a manner different from that requested or suggested by appellant, does not mean that the trial judge abused his discretion. "The trial court abuses its discretion in ruling on a particular

matter only where such ruling exceeds the bounds of reason." (*People v. Harris, supra,* 73 Cal.App.3d 76, 85.) Appellant has failed to show that the trial court abused its discretion in the instant case.

### Statement of Reasons

The trial court found the allegation with respect to appellant's prior conviction to be true and imposed the compulsory one-year enhancement pursuant to Penal Code section 667.5, subdivision (b). Appellant points out that Penal Code section 1170.1, subdivision (g) empowers the trial court to strike such additional punishment "'if it determines that there are circumstances in mitigation of the additional punishment,'" and states on the record its reasons for striking the additional punishment. Appellant argues that the trial court must state its reasons for *not* striking the additional punishment.

A similar contention was rejected in *People v. Dixie* (1979) 98 Cal.App.3d 852, 857 [159 Cal.Rptr. 717]. In *Dixie,* the court held that in imposing the compulsory enhancement for firearm use (Pen. Code, § 12022.5), the trial court did not err by failing to state its reason for imposing the enhancement. Penal Code section 1170.1, subdivision (g) also empowers the trial court to strike the additional punishment provided in Penal Code section 12022.5. In *Dixie,* the court reasoned that Penal Code section 1170, subdivision (c) requires a trial court to state its reasons for a "sentence choice," but a mandatory sentence is not a sentence choice. The court concluded, "[o]nly when a sentencing court strikes the enhancement does that action become a sentence choice requiring a statement of reasons on the record." (*Id.,* at p. 857.)

### Penal Code Section 1203.09

 Penal Code section 1203.09[1] provides that one who inflicts great bodily harm upon a person 60 years of age or older during the commission of several enumerated felonies (including robbery) shall be ineligible for probation. The statute by its terms does not require that a person who is found to have inflicted injury upon an aged person must

---

[1]Penal Code section 1203.09, subdivision (a) provides: "Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person who commits or attempts to commit one or more of the crimes listed in subdivision (b) against a person who is 60 years of age or older; or against a person who is blind, a paraplegic, or a quadriplegic, and such disability is known or reasonably should be known to the person committing the crime; and who during the course of the offense inflicts great bodily injury upon such person."

have knowledge that his victim is in fact 60 years of age or older. Appellant asks this court to construe section 1203.09 as requiring knowledge on the part of the defendant that his victim is 60 years of age or older. ■ In the alternative appellant requests this court to declare section 1203.09 unconstitutional as it denies him equal protection of the laws. Appellant states his equal protection argument as follows: "Under the terms of section 1203.09, two groups of defendants may be given an extra year of imprisonment if, during the course of committing one of the enumerated felonies, they inflict great bodily harm upon their victim. The first group, including appellant, is composed of those defendants who inflict such injury upon persons 60 years of age or older; the second is composed of those defendants who inflict such injury upon a person who is blind or a paraplegic or quadriplegic. As to the second group, the year's enhancement *may not* be imposed *unless* the victim's disability 'is known or reasonably should be known to the person committing the crime...,' whereas a literal reading of the statute would permit the first group to be enhanced even when they did not know and could not reasonably have known that the victim was 60 years of age or more. Since no evidence was introduced in the court below to show that appellant knew or should have known of the victim's age, his enhancement was made possible solely because of the discrimination between the two groups contained in section 1203.09(a)."

We note first that appellant advances these arguments for the first time on appeal. It may well be that if appellant had made these arguments below, the trial court would have determined that appellant reasonably should have known that Ms. Peters, who was 67 years of age at the time of the crime, was 60 years of age or older. Appellant is in a more advantageous position because he has raised these arguments for the first time on appeal because from the cold appellate record we cannot determine if appellant should have known that Ms. Peters was 60 years of age or older.

■ Appellant asserts that Penal Code section 1203.09, subdivision (a) should be construed to require knowledge on the part of a defendant that his victim is 60 years of age or older because otherwise the section would violate "a most basic part of our criminal jurisprudence—the concept of *mens rea.*" Preliminarily, we note that by its terms this section applies only to a question of eligibility for probation. Appellant reasons that because the section 1203.09 "crime" committed as to elderly victims omits the requirement of scienter, it imposes a form of strict liability upon the perpetrator. Section 1203.09 establishes no criminal

offense; the statute merely precludes probation as a sentence choice and comes into play after the conviction of a defendant for one of the felonies enumerated in subdivision (b) of the statute. Since section 1203.09 does not establish a separate crime, it does not violate the concept of *mens rea.*

 Next appellant contends that the distinction drawn in section 1203.09 between requiring some offenders to know that their victims are blind, paraplegic or quadriplegic and not requiring others to know that their victims are elderly is arbitrary and infringes upon his fundamental personal liberty interest. "Simply stated the 'concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'" (*In re Antazo* (1970) 3 Cal.3d 100, 110 [89 Cal.Rptr. 255, 473 P.2d 999].) The flaw in appellant's argument is that the two groups of offenders described in section 1203.09 *are not* "'similarly situated with respect to the legitimate purpose of the law...'" The People have stated this proposition as follows: "Stated otherwise, it is not one group of *offenders* which has been differentiated and invidiously discriminated against on the basis of some common characteristic of the group (e.g., race, sex, ethnic origin). The basis of the distinction, rather, is that different *victims* are involved. However, the legislature is certainly entitled to differentiate among criminal offenders on the basis of the seriousness of their criminal acts. This is but saying that criminal penalties may be tailored to fit the various criminal offenses without violating the Constitution. Disparate treatment of offenders for *different* crimes does not constitute a deprivation of equal protection, because the offenders simply are not 'similarly situated with respect to the legitimate purpose of the law...'"

As the California Supreme Court stated recently, "It is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code." (*Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608, 613 [159 Cal.Rptr. 340, 601 P.2d 572].) In sum, section 1203.09 properly recognizes a distinction in seriousness between two forms of underlying criminal conduct and the Legislature is empowered to make such a distinction.

### Waiver of Jury Trial

On January 2, 1979, the trial court was informed that appellant desired to waive his right to a jury trial. After a confusing discussion

between appellant and the court, appellant waived his right to a jury trial. The prosecutor also waived a jury trial. However, defense counsel did not join in the waiver and in fact told the court that appellant's waiver was against her advice. Appellant contends that because defense counsel did not consent to the waiver of a jury trial, the waiver was invalid and in contravention of the California Constitution.

The record of the jury trial waiver reflects the following colloquy: "Ms. HENLEY: Your Honor, at this time Mr. Peace has informed me he would waive his right to a jury trial. And I have informed him that this is against the advice of counsel, but he does have the right to waive a jury trial.

"THE COURT: Do you want to admonish him as to what the right entails?

"Ms. HENLEY: Mr. Peace, you have a right to have a District Attorney prove to a jury beyond a reasonable doubt, to a jury of twelve people, that you are guilty. And by waiving that right you are giving up this right to have a jury determine your case, and have a judge determine it.

"THE COURT: All right. Do you understand that, Mr. Peace?

"THE DEFENDANT: Huh-huh (negative).

"THE COURT: All right. Ms. Henley has informed the Court that it is your desire to waive or give up your right to a jury trial in this case and have this case tried in front of a judge sitting by himself. Is that right?

"Is that correct?

"THE DEFENDANT: What?

"THE COURT: That you want a judge to try the case instead of having a jury of twelve people decide this case.

"THE DEFENDANT: I want to go to the hospital.

"THE COURT: I understand. But concerning this matter which is on for trial today, is it your desire to have the matter tried by a judge or by a jury of twelve people?

"THE DEFENDANT: Can I ask you one more question?

"THE COURT: Now just give me one more answer. That is all. We will get to your next question later.

"THE DEFENDANT: I'd just like to ask you a question before I say which way I want.

"THE COURT: All right.

"THE DEFENDANT: Now, if I waive the jury trial and I want it heard by the judge, will I be back in court today?

"THE COURT: I don't know that for sure.

"THE DEFENDANT: Oh. You just want a plea of jury or judge, right?

"THE COURT: That is all we are interested in right now.

"THE DEFENDANT: Well, I will take the judge. I will take the judge.

"THE COURT: You understand you are giving up your right thereby to have this case tried by a jury—

"THE DEFENDANT: Yes. I know.

"THE COURT: That is your desire and you personally give up your right then to be tried by a jury?

"THE DEFENDANT: I give up my rights to be tried by a jury.

"THE COURT: All right.

"MS. HENLEY: Your Honor, for the record, this is against the advice of counsel.

"THE COURT: All right. Then the People—

"MR. BENSON: The People waive the jury, your Honor. I think the Defendant should be advised that he is—that the jury's verdict must be unanimous. I don't think that was explained to him.

"THE DEFENDANT: Well, I ain't never asked for no jury trial.

"THE COURT: I understand that. But you understand that if you are tried by a jury the District Attorney must prove your guilt beyond a reasonable doubt—

"THE DEFENDANT: I don't want no jury.

"THE COURT: —to all twelve jurors. You understand that?

"THE DEFENDANT: Well, I don't want no jury.

"THE COURT: Do you understand that? Do you understand you are giving—

"THE DEFENDANT: Right. Right.

"THE COURT: Okay. So you understand that?

"THE DEFENDANT: Yes. I understand.

"THE COURT: The Court finds that the Defendant has been advised of his rights in connection with the jury trial, that he has intelligently and voluntarily waived that right and understands the consequences thereof. Therefore, the waiver will be accepted."

Article I, section 16 of the California Constitution provides in part: "A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel." The People argue that defense counsel need not consent to the waiver of a jury trial. ■ However, the California Supreme Court has held that article I, section 16 of the California Constitution requires that defense counsel consent to the jury waiver. (*People* v. *Upshaw* (1974) 13 Cal.3d 29, 33-34 [117 Cal.Rptr. 668, 528 P.2d 756]; see also *People* v. *Kipnis* (1970) 5 Cal.App.3d 980, 986 [85 Cal.Rptr. 547].) In *Kipnis*, the court stated that although there is a constitutional right to a jury trial, there is no correlative right to a trial without a jury. (*People* v. *Kipnis, supra*, at p. 986; see also *Singer* v. *United States* (1965) 380 U.S. 24, 36 [13 L.Ed.2d 630, 638-639 85 S.Ct. 783].) Accordingly, a defendant does not have a constitutional right to waive a jury trial over his counsel's objections.

Next the People contend that because defense counsel did not specifically state she did not consent (she merely stated the waiver was against her advice), this court should determine that defense counsel impliedly consented to the waiver. ██ If defense counsel and/or the prosecutor state nothing in regard to the waiver, "the acquiescence of defense counsel and the prosecutor will be given effect as implied waivers." (*People* v. *Evanson* (1968) 265 Cal.App.2d 698, 701 [71 Cal.Rptr. 503].) However, in the instant case defense counsel stated the waiver was against her advice and it cannot be said that defense counsel impliedly waived the right to a jury trial.

### *Work Time/Good Time Credit*

██ Finally, appellant contends he is entitled to work time/good time credit of 48 days on his prison term for the 95 days he spent in presentence custody. In *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], the California Supreme Court held that a defendant in appellant's position must be given work time/good time credit unless he has "refused to satisfactorily perform labor as assigned" or "has not satisfactorily complied with the reasonable rules and regulations." (Pen. Code, § 4019, subds. (b) and (c).)

The judgment is reversed. Appellant's work time/good time credit can be computed after retrial.

Feinberg, J., and Dearman, J.,* concurred.

A petition for a rehearing was denied July 11, 1980.

---

*Assigned by the Chairperson of the Judicial Council.