Filed 1/23/15  P. v. Aldridge CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064644 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD247909) |
| | (Super. Ct. No. SCE323810) |
| TAMMIE TERRELL ALDRIDGE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed in part; affirmed in part.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy A. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

After defendant Tammie Terrell Aldridge[1] waived her right to a jury trial in the current domestic violence case—*People v. Aldridge* (Super. Ct. San Diego County, 2013, No. SCD247909)— the court found her guilty of the following four crimes following a bench trial: (1) inflicting corporal injury upon a spouse (count 1: Pen. Code,[2] § 273.5, subd. (a)); (2) assault with a deadly weapon (a knife) (count 2: § 245, subd. (a)(l)); (3) assault with a caustic chemical (bleach) (count 3: § 244); and (4) misdemeanor vandalism (count 4: § 594, subds. (a), (b)(2)(A)). The court also found to be true a sentence enhancement allegation that Aldridge personally used a deadly weapon (§ 12022, subd. (b)(1)), a knife, in the commission of count 1.

In September 2013 the court sentenced Aldridge in that case to a total state prison term of four years eight months, consisting of the middle term of three years for her conviction of count 1, plus one year for the true finding on the count 1 deadly weapon allegation, plus eight months (one-third the middle term) for her conviction of count 3.

In the same sentencing proceeding, in *People v. Aldridge* (Super. Ct. San Diego County, 2013, No. SCE323810), the court revoked the probation Aldridge had been granted less than a year earlier after she pleaded guilty to two counts of stalking (§ 646.9, subds. (a), (b)) the same two people—her husband, Jonathan Aldridge (hereafter her husband) and his girlfriend, Pashion Ferrara —she victimized in the current offenses. The

---

[1]     Although the trial court minutes, the abstract of judgment and the notice of appeal identify defendant as "Tammie Terrell Wicker," it was determined below that her true name is "Tammie Terrell Aldridge." We refer to her by her true name.

[2]     All further statutory references are to the Penal Code unless otherwise specified.

court imposed the low term of 16 months on one of the stalking charges and two years on the other, for a total of three years four months, to be served concurrently with the sentence imposed for the current offenses.

Aldridge appeals, contending (1) the court violated her federal and state constitutional rights to a jury trial and to due process by abandoning its neutral role and improperly inducing her to waive her right to a jury trial through the implied promise of a benefit in exchange for her jury trial waiver; and (2) the court erred in ordering her to pay a penalty assessment in conjunction with the restitution fine it imposed under section 1202.4, subdivision (b) (hereafter section 1202.4(b)). The Attorney General acknowledges the court improperly imposed the penalty assessment.

For reasons we shall explain, we strike the imposition of the penalty assessment in case No. SCD247909, but affirm the judgment in all other respects.

FACTUAL BACKGROUND[3]

On June 17, 2012, Aldridge first learned of her husband's relationship with Ferrara. On May 4, 2013, Aldridge stabbed her husband in his left forearm with a knife, and threw the contents of a cup—a liquid that smelled like bleach—into his face, causing his eyes to burn. Aldridge stabbed the tires of her husband's car.

---

[3]     As Aldridge does not challenge the sufficiency of the evidence in the current case (SCD247909), and most of the underlying facts in this case are not relevant to the two issues raised in this appeal, our summary of the factual background is very brief.

DISCUSSION

## I. *JURY TRIAL WAIVER*

Aldridge first contends the court violated her federal and state constitutional rights to a jury trial and to due process by abandoning its neutral role and improperly inducing her to waive her right to a jury trial through the implied promise of a benefit in exchange for her jury trial waiver. We reject this contention.

### A. *Background*

The People filed a pretrial motion seeking admission of evidence of Aldridge's prior acts of domestic violence. The motion detailed her violent and persistent harassment of her husband and Ferrara and members of Ferrara's family.

At a hearing in this matter the court noted on the record that "there [had been] some talk in chambers that [Aldridge] might want to consider waiving the jury trial." The court told Aldridge she had the right to waive the jury trial, that only she could waive it, and that, if she waived a jury trial, "it would be a bench trial and I would sit as judge and jury so you need to think about what you want to do in that regard if you want to go ahead with trial."

The court reminded Aldridge that she had rejected the People's offer to plead guilty to something less than the crimes charged against her, and the offer had since been revoked so her only option was to plead to all charges or go to trial. The court then asked Aldridge, "So do you think . . . you want to resolve it or do you want to have myself [*sic*] or a jury try the case?" Aldridge tried to hand the court a letter, but the court informed her it could not receive communications directly from her without discussing the matter

4

with her attorney.  Defense counsel said, "It's not okay with me, Your Honor.  I haven't seen it yet."

Aldridge then told the court her attorney was "not trying to help [her]."  The court then held a brief *Marsden*[4] hearing and, in a ruling Aldridge does not challenge on appeal, denied her request for new appointed counsel.

When proceedings resumed in open court following the *Marsden* hearing, the court indicated to Aldridge that the case had been assessed by several judges, the prosecutor, and her defense attorney.  The court said, "[If] it was blatantly not worthy of being in court, it would probably have been thrown out by now."  The court indicated that the crimes she was accused of committing, including stabbing someone and throwing a caustic chemical at him, were serious charges that involved "fairly egregious facts" and were not simply going to be "drop[ped]."  Aldridge interjected, "He was choking me, I had to get him off."  The court responded, "But you have to think, do you want a jury to hear all that, which is going to sound terrible to hear all that stuff, or do you want a judge to hear it . . . ?"  The court reminded Aldridge she was running out of time to "settle" the case, if that was what she desired to do, and he urged her to consider the matter over the lunch hour.

When the hearing resumed following the lunch recess, Aldridge told the court in the presence of her counsel that she wanted a bench trial.  The following exchange then took place between the court and Aldridge:

---

4       *People v. Marsden* (1970) 2 Cal.3d 118.

5

"[The court]: All right, so it is your desire to have a bench trial. Is that correct?

"[Aldridge]: Yes.

"[The court]: So it's your desire[.] [Y]ou know you have the constitutional right under both the California and United States Constitution to a jury trial by a jury of your peers? [¶] You understand that, correct?

"[Aldridge]: Yes.

"[The court]: But it's your desire to waive your right to a jury trial, and have the court decide the case otherwise known as a bench trial where the judge sits as judge of the law, and judge of the facts. Is that what you want to do?

"[Aldridge]: Yes.

"[The court]: So you want to waive your right to a jury, is that correct?

"[Aldridge]: Yes.

"[The court]: Okay. Then that's what we'll do."

B. *Applicable Legal Principles*

The California Supreme Court has explained that "[t]he Sixth Amendment, made applicable to the states . . . by the Fourteenth Amendment of the federal Constitution, confers upon a defendant in a criminal prosecution the right to a trial by jury. [Citations.] The right to a trial by jury is recognized to be a 'fundamental constitutional right.' [Citations.] Similarly, article I, section 16 of the California Constitution confers upon a defendant in a criminal prosecution the right to a trial by jury." (*People v. Collins* (2001) 26 Cal.4th 297, 304 (*Collins*).) A defendant's waiver of the right to jury trial may not be accepted by the court unless it is "knowing" and "intelligent," that is, made with full

6

awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it, and made voluntarily in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. (*Id.* at p. 308.) In the process of obtaining a defendant's waiver of his or her constitutional right to a jury trial, the trial court may not act "in a manner that [is] at odds with its judicial obligation to remain neutral and detached in evaluating the voluntariness of the waiver." (*Id.* at p. 309.)

In a criminal prosecution, a defendant's waiver of the right to a jury trial is not effective unless defense counsel consents to the waiver. (Cal. Const., art. I, § 16 ["A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel."].)

Defense counsel's consent to the defendant's waiver of the right to a jury trial may be express or implied. (19A Cal.Jur.3d (2009) Criminal Law: Rights of the Accused, § 267, p. 493.) Furthermore, where the trial court has received from the defendant an express verbal waiver of his or her right to trial by jury and defense counsel states nothing regarding the waiver, defense counsel's acquiescence will be given effect as an implied waiver. (*People v. Peace* (1980) 107 Cal.App.3d 996, 1008 (*Peace*) ["If defense counsel and/or the prosecutor state nothing in regard to the waiver, 'the acquiescence of defense counsel and the prosecutor will be given effect as implied waivers.'"]; accord, *People v. Evanson* (1968) 265 Cal.App.2d 698, 701 (*Evanson*) ["[I]t is settled that where an express waiver has been received from the defendant, the acquiescence of defense

7

counsel and the prosecutor will be given effect as implied waivers. It is only the waiver of the defendant himself that must be expressed in language."].)

C  *Analysis*

In support of her claim of constitutional error, Aldridge complains that the court described allegations against her as "fairly egregious facts" and that the court asked her, "[D]o you want a jury to hear all that, which is going to sound terrible to hear all that stuff, or do you want a judge to hear it . . . ?" Citing *Collins*, *supra*, 26 Cal.4th 297, she asserts that, "[i]n doing so, the court crossed the line and abandoned the neutral and detached role which is the essence of a judge," and it improperly sought to persuade her to waive her right to a jury trial.

We reject Aldridge's claim of constitutional error. The record shows that Aldridge**,** who was represented by counsel, made an informed, intelligent, and voluntary decision to waive her constitutional right to a jury trial. The remarks by the court to which she takes exception do not show the court improperly sought to persuade her to waive her right to a jury trial by implicitly promising her some benefit in exchange for that waiver. The court's remarks were simply an acknowledgement of the obvious reality that the nature of the charged offenses, combined by the prosecution's evidence of prior acts of domestic violence, would "sound terrible" to a jury.

Aldridge's reliance on *Collins*, *supra*, 26 Cal.4th 297, is unavailing. In that case, the California Supreme Court concluded that the trial court, by advising the defendant that he "would receive 'some benefit' if he waived his right to a jury trial" (*id.* at p. 300), "induced [the] defendant to waive his right to jury trial render[ing] that waiver

8

involuntary." (*Id.* at p. 312.) Here, the record does not show that the court made any such promise.

Last, although Aldridge's waiver of the right to a jury trial would have been ineffective had her trial counsel failed to consent to the waiver (Cal. Const., art. I, § 16), the record shows that defense counsel impliedly consented to Aldridge's waiver. As already discussed, defense counsel's consent to the defendant's waiver of the right to a jury trial may be express or implied (19A Cal.Jur.3d, *supra*, Criminal Law: Rights of the Accused, § 267, p. 493.) and defense counsel's acquiescence will be given effect as an implied waiver (*Peace*, *supra*, 107 Cal.App.3d at p. 1008; *Evanson*, *supra*, 265 Cal.App.2d at p. 701). Here, the record shows that Aldridge's trial counsel acquiesced in her waiver of her right to a jury trial. Both Aldridge and her counsel were present at the hearing on the issue of whether Aldridge wanted to waive that right. After both counsel made their appearances, the court began by observing that "there [had been] some talk in chambers that [Aldridge] might want to consider waiving the jury trial." Following the brief *Marsden* hearing, the court made its comment about the nature of the allegations and told Aldridge, "[T]hink about all this over lunch, we'll bring you back at 1:30. I'll need a decision at that time as to whether or not you want to settle it or what . . . you want. You've got to start seriously thinking about it because you're running out of time." The hearing resumed after the lunch recess and, with both counsel present, Aldridge waived her right to a jury trial. The court then canceled the jury trial and asked both counsel, "Anything further on the jury trial issue?" The prosecutor responded, "No, just for the record, the People don't oppose that. So . . . [¶] [w]e will accept the waiver and

9

scheduling is the next question."  The court told both counsel that it was "able to start [the bench trial] this afternoon," and then asked, "Is that okay with both counsel?"  Defense counsel responded, "That's fine with me."  The foregoing record establishes that defense counsel acquiesced in Aldridge's waiver of her right to a jury trial and the waiver was effective.  (*Peace*, *supra*, 107 Cal.App.3d at p. 1008; *Evanson*, *supra*, 265 Cal.App.2d at p. 701.)

For all of the foregoing reasons, we affirm Aldridge's conviction.

## II.  *PENALTY ASSESSMENT*

Aldridge also contends the court erred in ordering her to pay a penalty assessment in conjunction with the restitution fine it imposed under section 1202.4(b).  The record shows that, at sentencing, the court ordered her to "pay [a] restitution fine pursuant to [section 1202.4(b)] in the amount of $3,360, *plus* [*a*] *penalty assessment*."  The Attorney General acknowledges, and we agree, that the court improperly imposed the penalty assessment.  Subdivision (e) of section 1202.4 specifically provides that "[t]he restitution fine shall not be subject to penalty assessments . . . ."  Accordingly, we conclude the imposition of a penalty assessment must be stricken.

DISPOSITION

The penalty assessment imposed in case No. SCD247909 is stricken.  In all other respects the judgment is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

11