Filed 2/16/22  P. v. Sotomayor CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075682 |
| v. | (Super.Ct.No. BAF1800077) |
| ADRIEN JOSEPH SOTOMAYOR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Alfonso Fernandez, Judge.  (Retired judge of the Santa Clara County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Mark A. Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sedival, Collette C. Cavalier and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Adrien Joseph Sotomayor was charged with first degree murder and attempted murder in connection with a shooting that injured three people, one fatally. The jury found him guilty, however, only of lesser included offenses, specifically, one count of voluntary manslaughter (Pen. Code[1], § 192, subd. (a)) and two counts of attempted voluntary manslaughter (§§192, 664), as well as firearms use enhancements. Sotomayor admitted to a prior strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)). The trial court sentenced him to a total prison term of 38 years, eight months.

In this appeal, Sotomayor contends that the trial court erred by finding the prosecution had exercised due diligence in attempting to secure the attendance at trial of one of the surviving victims. That finding served as the predicate for declaring the witness unavailable and admitting into evidence his prior testimony. Sotomayor also argues that the trial court erred by imposing lesser firearms enhancements under section 12022.5 in place of the section 12022.53 enhancements that were found true by the jury, but which are legally inapplicable to voluntary manslaughter or attempted voluntary manslaughter.

We affirm the judgment.

## I. BACKGROUND

On January 10, 2018, Sotomayor shot three people with an AR-15 rifle; Adam S. (Sotomayor's cousin), Samuel S. (Adam S.'s half-brother and Sotomayor's cousin by

---

[1] Undesignated statutory references are to the Penal Code.

marriage), and Gilbert T. (a friend of Adam S. and Samuel S.). Samuel S. and Adam S. were each shot multiple times but survived. Adam S.'s injuries were more severe, including damage to his spine and internal organs that left him partially paralyzed. According to a forensic pathologist, Gilbert T. was likely shot once, with a single bullet going through his arm and into his torso, but he may have suffered two separate gunshot wounds; either way, his injuries were fatal.

Sotomayor was charged with one count of first degree murder (§ 187, subd. (a), count 1) and two counts of attempted first degree murder (§§ 187, subd. (a), 664, counts 2 and 3). The amended information alleged firearms enhancements as to each count (§§ 12202.53, subd. (d), 1192.7, subd. (c)(8)), as well as a prison prior (§ 667.5, subd. (b)) and a strike prior (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)).

Sotomayor's first trial ended in a mistrial due to the behavior of spectators in the courtroom. This appeal arises from his second trial.

The prosecution's theory was that Sotomayor's actions were deliberate and premeditated. The defense argued that he acted in self defense, either perfect or imperfect, based on, among other things, Sotomayor's testimony at trial and expert evidence that he suffers from paranoid schizophrenia exacerbated by amphetamine abuse disorder.

The jury found Sotomayor not guilty of murder or attempted murder, but found him guilty of the lesser included offenses of voluntary manslaughter (count 1) and attempted voluntary manslaughter (counts 2 and 3), and found true the firearms

enhancements alleged as to each of those counts. The prison prior was dismissed on the People's motion, based on a change in the law, and Sotomayor admitted the strike prior.

At sentencing, the trial court substituted section 12022.5, subdivision (a) enhancements in place of the section 12022.53, subdivision (d) enhancements found true by the jury, since section 12022.53 does not apply to voluntary manslaughter or attempted voluntary manslaughter. The court imposed the maximum sentence that could be imposed on the conviction offenses as modified by that substitution, totaling 38 years, eight months.[2]

## II.  DISCUSSION

A. *Unavailable Witness*

1. *Additional background*

At Sotomayor's first trial, in August 2019, Adam S. testified during the prosecution's case-in-chief. At the time, he was living in Banning, California, and he complied with a subpoena to testify in the trial. His testimony was completed, he had been excused by both the prosecution and the defense, and the trial had moved on to another witness before a mistrial was declared for unrelated reasons.

Sotomayor's second trial began in March 2020. Even though Adam S. had moved to the city of Rosarito, Mexico, since the first trial, he returned to testify again

---

[2] The 38 years, eight month total includes the upper term of 11 years for count 1, doubled to 22 years by the strike prior; the upper term of 10 years for the section 12022.5 enhancement of count 1; 2 years each for counts 2 and 3 (one third of the middle term); and 16 months each for the section 12022.5 enhancements of counts 2 and 3 (one third of the middle term).

4

voluntarily, without a new subpoena. As a U.S. citizen, he had no difficulty crossing the border to do so. Due to the COVID-19 pandemic, however, trial was suspended before he could be called to the stand.

Trial resumed in June 2020. The prosecution again made arrangements for Adam S. to travel to California to testify. The initial plan was that a Riverside County District Attorney's Office homicide investigator, David Purcell, would pick up Adam S. at a restaurant on the United States side of the border, near a pedestrian border crossing. Adam S. would be traveling with his girlfriend and child, who are not citizens of the United States and had visitor visas.[3] His girlfriend and child had previously entered the United States on many occasions, often because the child was receiving specialized treatment at a children's hospital in San Bernardino County.

A few hours before the agreed upon meeting time on June 22, 2020, however, Adam S.'s mother called Purcell and told him that Adam S. was ill and physically unable to make it to the planned meeting point. They agreed that, instead, Adam S.'s mother would drive to Rosarito, pick up Adam S., his girlfriend, and child, and drive them all to Riverside County. The mother would bring with her subpoenas, prepared by Purcell on that date, for Adam S. and his girlfriend.

On the morning of June 23, 2020, however, Adam S.'s mother called Purcell and informed him that the alternative plan had not worked. Adam S.'s girlfriend had been

---

[3] When Adam S. had made the trip from Mexico in March 2020, his girlfriend and child were already in California. On that occasion, Adam S.'s mother had driven to Mexico from her New Mexico home to transport him to Riverside County.

detained for questioning at the border and was ultimately denied entry.[4] Although Adam S. could have entered the United States without his girlfriend and child, he refused to do so. Adam S.'s mother and Purcell unsuccessfully attempted to persuade Adam S. to testify at trial despite his girlfriend's and child's visa problems. Adam S. told Purcell, however, that he would be willing to testify remotely via phone or a video phone application.

On June 24, 2020, the prosecution filed a motion to admit Adam S.'s testimony from Sotomayor's first trial under Evidence Code section 1291 since he was presently unavailable. On the same date, Sotomayor filed an opposition, and the trial court held a hearing, where Purcell testified outside the jury's presence. The trial court granted the motion, and Adam S.'s testimony from Sotomayor's first trial was read for the jury.

B. *Analysis*

Sotomayor contends that the trial court erred in finding that the prosecution had exercised due diligence in securing Adam S.'s attendance at trial. We are not persuaded.

"Under both the federal and state Constitutions a criminal defendant is guaranteed the right to be confronted with the witnesses against him." (*People v. Windfield* (2021) 59 Cal.App.5th 496, 510.) This right, however, "is not absolute." (*People v. Wilson* (2021) 11 Cal.5th 259, 290 (*Wilson*).) As relevant here, when a witness who testified at a

---

[4] Purcell later learned that border patrol agents did not believe the subpoenas were legitimate and detained Adam S.'s girlfriend for questioning about why they were coming to the United States. When questioned about drug use, she admitted to recreational use of marijuana in the United States, which violated the terms of her visa. On that basis, her visa and the child's visa were both canceled.

previous proceeding is unavailable to testify at trial, "it is statutorily and constitutionally acceptable for the former testimony to be used at trial." (*People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1428 (*Sandoval*).) This exception to the constitutional right of confrontation is codified in Evidence Code section 1291, which states: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] . . . [¶] (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Evid. Code, § 1291, subds. (a), (a)(2).)

Evidence Code section 240 defines "unavailable as a witness" to include a witness who is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid. Code, § 240, subd. (a)(5); see also *People v. Lawson* (2020) 52 Cal.App.5th 1121, 1131 (*Lawson*) ["a witness may be unavailable even if he or she did 'not fit neatly into one of the subdivisions of Evidence Code 240'"].) Thus, "the prosecution must demonstrate that 'the witness is unavailable and, additionally, that it made a "good faith effort" [citation] or, equivalently, exercised reasonable or due diligence to obtain the witness's presence at trial.'" (*Wilson*, *supra*, 11 Cal.5th at p. 291.) "While due diligence lacks a precise definition," our Supreme Court has "explained that it ""connotes persevering application, untiring efforts in good earnest, [and] efforts of a

7

substantial character.'"'"" (*Wilson*, at p. 291.)  "The totality of efforts of the proponent to achieve presence of the witness must be considered," including "not only the character of the proponent's affirmative efforts but such matters as whether he reasonably believed prior to trial that the witness would appear willingly . . . ."  (*People v. Sanders* (1995) 11 Cal.4th 475, 523.)  Ultimately, "[w]hat constitutes due diligence depends on the facts of each case."  (*People v. Martinez* (2007) 154 Cal.App.4th 314, 328.)

"When, as here, the facts are undisputed, a reviewing court decides the question of due diligence independently, not deferentially."  (*People v. Smith* (2003) 30 Cal.4th 581, 610 (*Smith*); see also *Sandoval*, *supra*, 87 Cal.App.4th at p. 1432 [independent standard of review applies both to "failed efforts to *locate* an absent witness" and "failed efforts to *obtain the attendance* of a witness at trial"].)

We cannot conclude that the prosecution acted with less than due diligence in attempting to secure Adam S.'s testimony at Sotomayor's second trial.  There was every reason to believe that he would appear to testify voluntarily.  He not only cooperated with the prosecution during Sotomayor's first trial, he also voluntarily traveled from Mexico to testify during the second trial, and was only prevented to do so by the pandemic-related suspension of the proceedings.  In advance of the resumption of trial, Adam S. again volunteered to travel from Mexico to testify, and the prosecution made arrangements to assist him in doing so by sending Purcell to meet him at the United States-Mexico border.  Those plans fell through, not because Adam S. had a change of heart, but because of his physical condition.  Even then, however, he was willing to make

8

the trip via alternative arrangements facilitated by Purcell on the prosecution's behalf. Moreover, at no point prior to June 23, 2020 did the prosecution have any reason to think that Adam S., his girlfriend, or his child would have any difficulty in crossing into the United States, given that on previous occasions none of them had any substantial difficulty in doing so. The prosecution reasonably believed no additional efforts were needed to secure Adam S.'s presence at trial until his girlfriend and child were unexpectedly turned away at the border.

This case is analogous to situations where a material witness unexpectedly disappears on the eve of trial and cannot be relocated. It is well established that the prosecution "is not required 'to keep "periodic tabs" on every material witness in a criminal case . . . .'" (*People v. Wilson* (2005) 36 Cal.4th 309, 342.) "Also, the prosecution is not required, absent knowledge of a 'substantial risk that this important witness would flee,' to 'take adequate preventative measures' to stop the witness from disappearing.'" (*Ibid*.; see also *People v. McElroy* (1989) 208 Cal.App.3d 1415, 1428 ["The law requires only reasonable efforts, not prescient perfection"], disapproved on other grounds by *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.) Here, Adam S. did not flee to avoid testifying, but he did unilaterally and at the last minute decide that he would not make the trip from Rosarito, Mexico to Riverside County to testify, to similar effect. As discussed above, there is no evidence that the prosecution had advance knowledge of a substantial risk that he might have such a change of heart. We therefore conclude that the prosecution made the requisite good faith effort or exercised the

9

reasonable or due diligence necessary to have Adam S.'s prior testimony admitted under section 1291.

Sotomayor criticizes the prosecution for having failed to take additional steps before June 23, 2020, to facilitate Adam S.'s presence at trial, such as issuing a subpoena earlier than it did, "arrang[ing] with the United States Border Patrol to make the border crossing go smoothly," or "request[ing] for the assistance of either national government." Viewed in hindsight, however, "it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence." (*Hardy v. Cross* (2011) 565 U.S. 65, 71.) Even assuming "'additional efforts might have been made," in this context "[i]t is enough that the People used reasonable efforts.'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 677.)

Sotomayor also proposes that there was more that the prosecution could have done even after "things did not go as planned," noting that "there was no request for a bench warrant, and nobody traveled to Rosarito on behalf of the prosecution." Nothing in the record suggests, however, that either of these steps could have been effective. Purcell or another representative of the prosecution would have had no authority to compel Adam S. to return to the United States, even if they did travel to Mexico to meet with him. Even assuming there were steps that could have been taken to enforce a bench warrant in Mexico, it is implausible that those steps could have been accomplished in time to compel Adam S. to testify at Sotomayor's trial; the resumed proceedings were already underway when he unexpectedly withdrew his cooperation. The measures Sotomayor

now proposes, therefore, would have been little more than "symbolic gesture[s] and without practical impact," and "'[t]he law neither does nor requires idle acts.'" (*Lawson*, *supra*, 52 Cal.App.5th at p. 1130; see also *Smith*, *supra*, 30 Cal.4th at p. 624 ["Trial courts 'do not have to take extreme actions before making a finding of unavailability,'" but rather must take "'reasonable steps to induce the witness to testify unless it is obvious that such steps would be unavailing'"].)

Finally, Sotomayor suggests that the prosecution did not exercise due diligence because it did not arrange to have Adam S. "give live testimony remotely," as he suggested to Purcell that he was willing to do.[5] Sotomayor's trial, however, resumed in June 2020, and was one of the first trials to occur in Riverside County during the pandemic. We cannot assume that at the time the trial court was equipped, technologically and otherwise, to allow a witness in a jury trial to testify remotely, even if it has since developed that capability. Importantly, the defense never argued that Adam S. should be allowed to testify remotely. Instead, it took the position that Adam S. either should be present in court or his testimony should not be introduced at all. Given that position, neither the prosecution nor the trial court had an obligation to pursue remote testimony as a possible alternative solution to the problem of Adam S.'s availability. (See, e.g., *People v. Mitcham* (1992) 1 Cal.4th 1027, 1066 [defendant "neither suggested

---

[5] This argument perhaps more naturally relates to the issue of whether Adam S. was truly unavailable to testify, rather than whether the prosecution exercised due diligence in securing his presence at trial. Regardless of how the issue is framed, however, our conclusions here remain the same.

nor requested any alternatives for the court's consideration" so the court "had no obligation to pursue such alternatives on its own initiative"].)

We conclude the prosecution was reasonably diligent in its efforts to secure Adam S.'s testimony, and Sotomayor has demonstrated no error in the court's decision to admit his prior testimony under Evidence Code section 1291.

C. *Firearms Enhancements*

Sotomayor contends that the trial court imposed an unauthorized sentence by substituting uncharged section 12022.5 enhancements for the section 12022.53 enhancements charged in the amended information and found true by the jury. We disagree.

"Section 12022.53 provides three different sentence enhancements for the personal use of a firearm in the commission of enumerated offenses." (*People v. Yanez* (2020) 44 Cal.App.5th 452, 458 (*Yanez*), review granted Apr. 22, 2020, S260819.) The enhancement relevant here is the 25-year-to life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death, described in section 12022.53, subdivision (d). The enumerated offenses to which section 12022.53 applies include murder and attempted murder, but do not include voluntary manslaughter or attempted voluntary manslaughter. (§ 12022.53, subd. (a).)

Section 12022.5, subdivision (a), provides a sentencing enhancement of 3, 4, or 10 years for "any person who personally uses a firearm in the commission of a felony . . . unless use of a firearm is an element of that offense." As such, section 12022.5 applies to

both voluntary manslaughter and attempted voluntary manslaughter, and it is applicable in any case where section 12022.53 findings are made. Section 12022.5 thus could be described as a lesser included enhancement of section 12022.53, subdivision (d), in the sense that its "factual predicates are necessarily found true when a factfinder finds true the greater enhancement." (*People v. Delavega* (2021) 59 Cal.App.5th 1074, 1083, review granted Apr. 14, 2021, S267293 (*Delavega*).)

Sotomayor emphasizes in briefing that panels of the Court of Appeal have recently split on the question of whether a trial court that exercises its sentencing discretion to strike or dismiss a section 12022.53 enhancement in the interest of justice may impose in its place an uncharged lesser included enhancement. (See § 12022.53, subd. (h) ["The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section"].) He proposes that we should apply here the line of authority holding that a court that strikes a section 12022.53 enhancement may not impose an uncharged lesser enhancement in its place. Since briefing was completed in this case, however, our Supreme Court has sided with the other side of the split, concluding that "the statutory framework permits a court to strike the section 12022.53(d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead." (*People v. Tirado* (Jan. 20, 2022) 12 Cal.5th 688, 692 (*Tirado*).)

Moreover, the issue resolved by *Tirado* is different from the one presented by this case. The trial court did not strike *Sotomayor's* section 12022.53 enhancements in an

exercise of discretion under section 12022.53, subdivision (h) and section 1385.  Rather, because Sotomayor was found guilty only of voluntary manslaughter and attempted manslaughter, instead of murder and attempted murder, the section 12022.53 enhancements alleged against him were legally inapplicable.  Our Supreme Court has held that the trial court has the power to impose an uncharged lesser included enhancement when a greater enhancement must be stricken because it is either legally inapplicable or lacks the support of sufficient evidence.  (*People v. Strickland* (1974) 11 Cal.3d 946, 961 (*Strickland*).)  It thus has long been the law that a court may do so.  (See *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396 (*Fialho*).)  The Supreme Court's discussion in *Tirado* does not undermine, but rather affirms yet again, this longstanding line of authority.  (See *Tirado*, *supra*, at p. *7 [citing with approval *Strickland* and *Fialho*].)

Moreover, the issue presented by this case was clear even before the Supreme Court decided *Tirado*.  The trial court did not strike Sotomayor's section 12022.53 enhancements in an exercise of discretion under section 12022.53, subdivision (h) and section 1385.  Rather, because Sotomayor was found guilty only of voluntary manslaughter and attempted manslaughter, instead of murder and attempted murder, the section 12022.53 enhancements alleged against him were legally inapplicable.  Our Supreme Court has held that the trial court has the power to impose an uncharged lesser included enhancement when a greater enhancement must be stricken because it is either legally inapplicable or lacks the support of sufficient evidence.  (*People v. Strickland*

14

(1974) 11 Cal.3d 946, 961.)  It thus has long been the law that a court may do so. (*People v. Lucas* (1997) 55 Cal.App.4th 721, 743; *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396; *Morrison*, *supra*, 34 Cal.App.5th at p. 222.)  "This is so regardless of section 1170.1, subdivision (e), which requires all enhancements to be pleaded and proved in the accusatory pleading."[6] (*Morrison*, *supra*, 34 Cal.App.5th at p. 222.)

We conclude that the trial court did not err by imposing section 12022.5, subdivision (a) enhancements in place of the legally inapplicable section 12022.53 enhancements found true by the jury.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL ⎯⎯⎯⎯⎯⎯⎯⎯
                J.

We concur:

RAMIREZ ⎯⎯⎯⎯⎯⎯⎯⎯
        P. J.
CODRINGTON ⎯⎯⎯⎯⎯⎯⎯⎯
        J.

---

[6] A concurring opinion in *Fialho* relies on section 1170.1, subdivision (e) in concluding the trial court erred by imposing uncharged section 12022.5 enhancements in place of section 12022.53 enhancements that had to be stricken because they did not apply to the defendant's conviction offenses.  (*Fialho*, *supra*, 229 Cal.App.4th at pp. 1399-1402 (Márquez, J., concurring).)  Even that concurring opinion, however, would have found the error harmless.  (*Id.* at pp. 1401-1402.)