Filed 1/17/25  P. v. Williams CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HARLAN NELSON HAWK WILLIAMS,<br><br>    Defendant and Appellant. | A166856<br><br>(Mendocino County<br>Super Ct. Nos. 22CR00379 &<br>22CR00412-A) |

Defendant Harlan Nelson Hawk Williams appeals a judgment sentencing him to 20 years in prison for carjacking (Pen. Code,[1] § 215, subd. (a)) with an enhancement for personal use of a firearm (§ 12022.53, subd. (b)).  Williams contends that the trial court violated the prohibition on dual use of facts by imposing the middle term for the carjacking while also imposing sentence on the firearm use allegation.  Williams further argues that the trial court erred by failing to strike the firearm use allegation in the interests of justice and failing to recognize that it could substitute a lesser firearm enhancement.

_____

[1] All further statutory references are to the Penal Code.

Williams forfeited these claims by failing to object to the trial court's statement of reasons at sentencing, and even if he had objected, the claims fail on their merits. We affirm.

## I. BACKGROUND

### A. *The Day of the Carjacking*

On an afternoon in February 2022, I.C.[2] was driving his car with his friend Juan C. in the passenger seat. I.C. saw Williams in the road with a woman. Williams pulled out a gun and pointed it at I.C. from in front of the car. Williams was yelling at I.C., but I.C. did not understand. Williams opened the driver's side door and pulled I.C. out of the car by his shirt. Williams gestured for I.C. to get on the ground, and he obeyed.

When I.C. was on the ground, Williams hit him in the cheek with the gun. I.C. was afraid and thought that he was going to die. Williams then pulled Juan out of the car and told him to get on the ground. Once Juan was on the ground, Williams got into the driver's seat of I.C.'s car. The woman accompanying Williams, later identified as his wife Bridgette Frank, got into the passenger seat and Williams drove away.

Officers came to the scene of the carjacking. While they were on scene, the stolen vehicle drove by them. The vehicle fled with officers in pursuit and crashed into a tree, raising a cloud of dust. When the dust cleared, officers saw Frank running from the scene of the crash and detained her. Officers found Williams's cell phone inside the crashed stolen vehicle. Williams was

---

[2] To protect personal privacy interests, we refer to the victims in this case by their initials or first name and last initial, and thereafter by their initials or first name only. No disrespect is intended. (Cal. Rules of Court, rule 8.90(b)(4).)

detained approximately an hour later.  In a post-*Miranda*[3] interview with police, he denied the carjacking but said he would "take all these charges."

## B.    *Jury and Bench Trials*

In case No. 22CR00412-A, the Mendocino County District Attorney charged Williams and Frank with carjacking of I.C. (§ 215, subd. (a)) and other felonies.  The district attorney alleged that Williams personally used a firearm in the carjacking (§ 12022.53, subd. (b)) and had previously suffered a "strike" conviction (§§ 1170.12, 667).  The district attorney alleged seven circumstances in aggravation applicable to Williams.  (Cal. Rules of Court, rule 4.421.)

Williams and Frank were initially tried together.  The jury deadlocked, and the court declared a mistrial.  The trial court granted Frank's motion to sever her trial from Williams's.

After the district attorney dismissed the other felony charges, Williams was retried for carjacking.  The trial court bifurcated trial on the strike allegation and aggravating circumstances, and Williams waived jury trial on those issues.  The jury convicted Williams of carjacking and found the firearm use allegation true.  The court held a bench trial and found true the strike prior and the following aggravating circumstances: the offense involved a threat of great bodily harm, Williams was armed with a weapon at the time of the offense, Williams had served a prior prison term, Williams was on postrelease community supervision (PRCS) at the time of the offense, and Williams's prior convictions were numerous and of increasing seriousness.  (Cal. Rules of Court, rule 4.421(a)(1), (2) & (b)(2)–(4).)  The court declined to find that Williams's prior performance on supervision was unsatisfactory.  (Cal. Rules of Court, rule 4.421(b)(5).)  It failed to rule on the allegation that

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

Williams had engaged in violent conduct that represented a serious danger to society. (Cal. Rules of Court, rule 4.421(b)(1).)

## C.    *Sentencing*

In advance of sentencing, Williams filed a statement in mitigation. He submitted a report by a licensed psychologist documenting his history of childhood trauma and argued that this history required a low-term sentence. (§ 1170, subd. (b)(6).) Williams reminded the trial court of the prohibition against dual use of facts, pointing out that the court could not rely on his firearm use to choose a particular term if it also imposed sentence on the firearm use allegation. (§ 1170, subd. (b)(5); Cal. Rules of Court, rule 4.420(g).) He invited the trial court to dismiss the prior strike conviction in the interests of justice. He further asked the court to strike the firearm use allegation in the interests of justice. (§ 1385, subd. (c).) Recognizing that he was "not before [the trial] court with an unblemished record," Williams requested a six-year sentence, consisting of "the low term of three years, enhanced by the special allegation that defendant was previously convicted of a strike offense."

The district attorney filed a sentencing memorandum opposing Williams's motion to strike the prior conviction based on his criminal history, the violence of the carjacking, and his "dangerous conduct that puts the public at risk of being seriously harmed." The district attorney acknowledged the trial court's discretion to strike the firearm enhancement, but urged the court to deny Williams's motion based on a finding that dismissal would endanger public safety. The People sought imposition of the upper term of

nine years, doubled based on the strike conviction, with imposition of the 10-year firearm enhancement for an aggregate term of 28 years in prison.

The trial court began the sentencing hearing by affirming that it had read and considered the parties' sentencing briefs. At oral argument, Williams's counsel emphasized the mandatory dismissal language of section 1385, subdivision (c)(2)(C)[4] and the evidence of childhood trauma referenced in her statement in mitigation.

The trial court sentenced Williams to the middle term of five years for carjacking, doubled to 10 years based on the strike prior, with an additional 10-year enhancement for the firearm use allegation, resulting in a total aggregate sentence of 20 years in prison.

## D.    *Case No. 22CR00379*

In case No. 22CR00379, the Mendocino County Probation Department filed a petition for revocation of community supervision. The petition alleged that Williams had been released from prison on January 26, 2022, and had violated three terms of his PRCS: failure to comply with instructions of his supervising county representative by missing an appointment, engaging in conduct prohibited by law based on the February 2022 carjacking described above, and using a firearm based on an initial charge of assault with a firearm in case No. 22CR00412-A. The trial court found Williams in violation of PRCS during the bench trial on his prior strike conviction in case

---

[4] Section 1385, subdivision (c)(2)(C) pertains to the application of an enhancement that could result in a sentence of over 20 years. On appeal, Williams expressly abandons his claim that the trial court was required to dismiss the firearm enhancement under this provision and does not address several other mitigating circumstances he urged the trial court to apply. He limits his contention of error to the trial court's failure to accord great weight to his childhood trauma.

No. 22CR00412-A. At the sentencing hearing in that case, the trial court revoked PRCS and sentenced Williams to 180 days in county jail. Williams had completed his sentence based on credit for time served at the time of sentencing.[5]

## II. DISCUSSION

### A. *Standard of Review*

"A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " ' " (*People v. Jones* (2009) 178 Cal.App.4th 853, 860–861 (*Jones*).) "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 (*Gutierrez*)), and "considered all of the relevant factors" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310).

---

[5] Although Williams's notice of appeal includes both cases, he made no objection to the trial court's finding of a PRCS violation or sentence. He also makes no substantive arguments in either opening or reply regarding the PRCS case. An appellate court will ordinarily not consider erroneous rulings where an objection could have been made in the lower court but was not. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590.) Failure to offer substantive argument to support a claim on appeal forfeits the claim. (*People v. Hoyt* (2020) 8 Cal.5th 892, 914.) We therefore do not further discuss the PRCS case.

Second, a " ' " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citation.]' [Citation.] Even if a trial court has stated both proper and improper reasons for a sentence choice, 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*Jones*, *supra*, 178 Cal.App.4th at p. 861.)

## B.    *Williams Forfeited His Claims by Failing to Object*

The Attorney General argues that Williams has forfeited all of his claims by failure to object to the trial court's statement of reasons at the time of sentencing. Williams acknowledges that his trial counsel did not object to the trial court's statement of reasons at sentencing.

A party may not raise on appeal " 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized [citation]." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751, quoting *People v Scott* (1994) 9 Cal.4th 331, 353–354 (*Scott*).) A forfeiture may be found only where there was " 'a meaningful opportunity to object' " during the course of the sentencing hearing, i.e., where parties were " 'clearly apprised of the sentence' " the court intended to impose and the reasons supporting its discretionary choices. (*Gonzalez*, at p. 751, italics omitted.)

Here, Williams had a meaningful opportunity to object to the trial court's sentence. In addition to filing a statement in mitigation, the record reflects that after pronouncing sentence and before advising Williams of his appellate rights, the trial court paused to allow Williams and his counsel to confer about whether he wanted to be present for further restitution proceedings. After that consultation, Williams's counsel addressed the trial court regarding future restitution hearings and voiced no objection to the sentence just imposed. We agree with the Attorney General that Williams has forfeited his claims.

## C. *No Violation of Dual Use Prohibition*

Williams also fails to show that the trial court's selection of the middle term, coupled with its sentence for the firearm use enhancement, violated the dual use prohibition. Section 1170, subdivision (b)(6) establishes a presumption that the trial court shall impose the lower term where the defendant "has experienced psychological, physical, or childhood trauma" that was "a contributing factor in the commission of the offense." The trial court "may only depart from this lower term presumption if it finds that the aggravating circumstances outweigh the mitigating circumstances such that the lower term would be contrary to 'the interests of justice.' " (*People v. Salazar* (2023) 15 Cal.5th 416, 419.) In addition, a sentencing court generally cannot make dual use of a single fact by using it "both to aggravate the base term and to impose an enhancement." (*Scott, supra*, 9 Cal.4th at p. 350; see also Cal. Rules of Court, rule 4.420(g) ["a fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so"].)

8

The trial court began its pronouncement of sentence by finding that section 1170, subdivision (b)(6) applied because Williams had experienced childhood trauma that was a contributing factor in the commission of the offense. The court then explained its election to impose the midterm sentence: "But I still have to . . . look at the aggravating factors and mitigating factors that apply in this case, and the aggravating factors clearly outweigh—not necessarily just in number, although they do, but in significance as well." The court found the factors in aggravation "substantially outweigh the factors in mitigation and . . . the appropriate sentence in balancing those interests is the midterm." It continued: "[T]hat five-year term is doubled with the imposition of the strike. I cannot in good conscience find that this would be an unusual case where it would be in the interest of justice to dismiss that strike given the fact that Mr. Williams was on PRCS at the time of this event, there have been no significant breaks in criminality during the time . . . between where he suffered the strike and has been placed on . . . PRCS."

Turning to the firearm enhancement, the court explained: "[T]he carjacking in this case did not require the use of a firearm. It was more than just the presentation of a firearm; it was the actual use of a firearm. Although the firearm wasn't discharged, . . . it was personally used to strike the victim in order to gain access of the vehicle that was ultimately carjacked. [¶] And so I . . . find that the enhancement is appropriate in this case, that it is in the interest of justice to impose it, and it would not be in the interest of justice to strike it."

Williams contends the trial court relied on firearm use to both aggravate the base term for carjacking and to sentence on the

section 12022.53 enhancement.[6] But he fails to overcome the presumption of correctness to which the trial court's determination is entitled on appeal. The trial court expressly referenced section 1170, subdivision (b)(6) in choosing the term of imprisonment for the carjacking, acknowledging that its finding of childhood trauma required it to "start[] with" the lower term. The court then expressly found that the "aggravating circumstances substantially outweigh the mitigating circumstances" in both number and significance in determining that the middle term was the appropriate sentence. As noted above, the court found four other aggravating circumstances to be true in addition to the use of a firearm: (1) the threat of great bodily harm in the offense, (2) Williams's increasingly serious criminal history, (3) his recent release on PRCS at the time of the commission of the carjacking, and (4) his prior service of a prison term. Contrary to Williams's argument that "the trial court did not . . . suggest that other aggravating factors . . . supported its selection of the midterm," the court focused heavily on Williams's status on PRCS, his prior criminal history, and the lack of any significant break in Williams's record of imprisonment, supervision, and criminal conduct in determining that he did not fall outside the spirit of the "Three Strikes" sentencing law, making no reference to his firearm use. Indeed, the trial court's only comments on Williams's firearm use occurred during its explanation for its choice to impose sentence on the enhancement.

While Williams complains that the trial court did not list each aggravating factor it relied on in imposing the midterm sentence to make it clear it did not rely on firearm use, the court was not required to be so

---

[6] In reply, Williams correctly concedes that the trial court was entitled to rely on the aggravating circumstance that the offense involved the threat of great bodily harm because the threat of great bodily harm is not an element of carjacking. (Cal. Rules of Court, rule 4.421(a)(1).)

specific.  It only had to " ' "state in simple language the primary factor or factors that support[ed]" ' " its discretionary sentencing choice.  (*People v. Buford* (2016) 4 Cal.App.5th 886, 900.)  The trial court is presumed to have considered all the relevant sentencing factors set forth in the rules and to have acted to achieve legitimate sentencing objectives, and Williams bears the burden to demonstrate error.  (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)  On this record, he has failed to do so.  Williams has similarly failed to demonstrate that the resulting sentence was irrational or arbitrary.  (See *Jones*, *supra*, 178 Cal.App.4th at pp. 860–861.)  We find no abuse of discretion.

Even if the trial court had impermissibly relied on firearm use to impose the middle term, any error was harmless.  "[I]f a trial court has stated both proper and improper reasons for a sentencing choice, 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*Jones*, *supra*, 178 Cal.App.4th at p. 861.)  In this case, there is no reasonable probability that the trial court would have selected the lower term.  Had the court believed that a sentence of less than 20 years was appropriate, it had multiple avenues to impose a lesser sentence, including striking Williams's prior conviction or the firearm enhancement.  Instead, the court emphasized Williams's criminal history and status on PRCS in concluding that it could not "in good conscience" find Williams outside the spirit of the Three Strikes sentencing law—a conclusion Williams does not challenge on appeal.  The record amply supported that finding, particularly in light of the extremely short duration of Williams's release on PRCS prior to the carjacking.  The trial court also declined to strike the firearm enhancement, recognizing that it had the discretion to do so and finding that

it would not serve the interests of justice. In short, the trial court made every discretionary sentencing choice it could in a manner adverse to Williams with the exception of selecting the middle term rather than the upper term. With a plethora of other proper aggravating circumstances to rely on, this record affords no basis to believe that the trial court would have selected the lower term absent dual use of the firearm aggravating circumstance.[7]

## D. *Failure to Strike Enhancement Did Not Abuse Discretion*

Williams argues that the trial court erred in two ways by imposing sentence on the firearm enhancement. First, he contends that the trial court failed to give great weight to his childhood trauma in denying his section 1385 motion to dismiss the firearm enhancement in the interests of justice. Second, he argues that the trial court was unaware of its discretion to impose a lesser uncharged firearm enhancement under section 12022.5, subdivision (a) when striking an allegation under section 12022.53, subdivision (b), and therefore failed to exercise informed discretion. (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) We find no abuse of discretion.

### 1. **Weight to Childhood Trauma**

Williams initially argued that section 1385 creates a rebuttable presumption requiring dismissal of enhancements whenever a court finds the specified mitigating factors present and fails to also expressly find that dismissal of the enhancement would endanger public safety as defined in the statute. After Williams filed his opening brief, the California Supreme Court held that section 1385, subdivision (c)(2) does not "create[] a rebuttable presumption in favor of dismissing an enhancement that can only be

---

[7] Because we conclude that there is no reasonable probability that the trial court would have chosen a lower term sentence, we also conclude that Williams has failed to demonstrate ineffective assistance of counsel for failure to object to the sentence as a basis for avoiding forfeiture.

overcome by a finding that dismissal endangers public safety." (*People v. Walker* (2024) 16 Cal.5th 1024, 1034 (*Walker*).) Instead, "a trial court must 'engage[] in a holistic balancing with *special emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal' [citation] . . . . Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1036, italics added by *Walker*.)

In reply, Williams acknowledges *Walker*'s holding and concedes the lack of a rebuttable presumption in favor of dismissal. He nonetheless argues that the trial court's comments demonstrate that it "focused solely on the fact that Williams not only displayed the firearm during the carjacking, but also used it to strike the victim," and that "the court's reasoning does not reflect that the court gave *any* weight, let alone 'great weight,' to the mitigating circumstance of Williams's childhood traumas."

Williams's argument focuses too narrowly on only one portion of the trial court's comments. Williams would have us require that the trial court repeat each aggravating and mitigating circumstance it considered at each separate sentencing choice—but section 1170, subdivision (c) does not require any particular form of statement or the specific identification of " 'aggravating and mitigating factors . . . or . . . "ultimate facts" that

13

"justify[]" ' " discretionary sentencing choices. (*People v. Buford*, *supra*, 4 Cal.App.5th at p. 900.) " 'Rather, the court must "state in simple language the primary factor or factors that support the exercise of discretion." ' " (*Ibid.*)

Here, the trial court began its statement of reasons by recognizing the significance of Williams's childhood trauma in selecting the appropriate term. It then acknowledged Williams's increasingly serious criminal record, service of prison time, and recent release on PRCS before concluding that imposing sentence on the firearm enhancement would further justice considering Williams's use of a firearm to pistol-whip a victim (who the record reflects was already out of his car and on the ground). We agree with the Attorney General that the entirety of the court's comments reflect that it "acted within its discretion by concluding that these actions constituted 'countervailing factors' that neutralized the 'great weight of the mitigating circumstance, such that dismissal of the enhancement [was] not in furtherance of justice.' "

## 2. Discretion to Substitute a Lesser Enhancement

Williams's second contention, that the trial court failed to exercise informed discretion to substitute a lesser firearm enhancement, fares no better. Prior to 2018, section 12022.53 enhancements were mandatory and could not be stricken by the trial court. (*People v. Tirado* (2022) 12 Cal.5th 688, 695 (*Tirado*).) Senate Bill No. 620 (2017–2018 Reg. Sess.) amended the statute to allow the court to strike an otherwise mandatory enhancement in the interest of justice pursuant to section 1385. (§ 12022.53, subd. (h); *Tirado*, at p. 696.) The Courts of Appeal split on the question of whether a court could now strike an enhancement charged under section 12022.53, subdivision (d) and, in its place, impose a lesser enhancement under section 12022.53, subdivision (b) or (c), even if the lesser enhancement was

14

not specifically charged in the information or found true by a jury. (*Tirado*, at p. 696.) The *Tirado* court resolved the split, holding the trial court has this discretion. (*Id.* at p. 700.)

Tirado relied on a long line of prior cases holding that a court is not categorically prohibited from imposing a lesser included, uncharged enhancement so long as the prosecution has charged the greater enhancement and the facts supporting imposition of the lesser enhancement have been alleged and found true. (*Tirado*, *supra*, 12 Cal.5th at pp. 697–698, citing *People v. Strickland* (1974) 11 Cal.3d 946, *People v. Fialho* (2014) 229 Cal.App.4th 1389, *People v. Dixon* (2007) 153 Cal.App.4th 985, and *People v. Lucas* (1997) 55 Cal.App.4th 721.) The opinion approved the reasoning of *People v. Morrison* (2019) 34 Cal.App.5th 217, which it described as "[e]xtending the principle" of *Strickland, Fialho, Dixon, Lucas,* and *People v. Allen* (1985) 165 Cal.App.3d 616. (*Tirado*, at p. 696.) Notably, *Fialho* addressed the specific lesser enhancement raised by Williams here, holding a trial court could impose personal firearm use enhancements under section 12022.5, subdivision (a) after determining that section 12022.53, subdivision (d) enhancements found true by the jury no longer applied to the lesser included offenses of which the defendant was convicted. (*Fialho*, at pp. 1398–1399.)

After *Tirado* and before Williams's sentencing hearing, multiple published Court of Appeal decisions considered whether a sentencing court striking a found-true section 12022.53 enhancement could impose a lesser section 12022.5 enhancement. Two held that it could. (*People v. Fuller* (2022) 83 Cal.App.5th 394, review granted Nov. 2, 2022, S276762, review dism. June 26, 2024; *People v. Johnson* (2022) 83 Cal.App.5th 1074, review granted Dec. 14, 2022, S277196, review dism. June 26, 2024.) One reached

15

the opposite conclusion, holding that the plain language of section 12022.53, subdivision (j)[8] prohibited a court from substituting a more lenient enhancement from another statute. (*People v. Lewis* (2022) 86 Cal.App.5th 34, 39, disapproved of by *People v. McDavid* (2024) 15 Cal.5th 1015, 1030.)

Williams cited *Tirado* in his statement in mitigation but requested only that the trial court strike the enhancement in its entirety. He did not ask the court to consider substituting a lesser section 12022.5 enhancement, nor did he cite *Fuller*, *Johnson*, or *Lewis*.[9]

After Williams filed his opening brief, the California Supreme Court resolved the split between *Fuller*, *Johnson*, and *Lewis*, disapproving *Lewis*, and holding that "[w]hen a court has exercised its discretion under subdivision (h) to strike a section 12022.53 enhancement and finds that no other section 12022.53 enhancement is appropriate, the second sentence of subdivision (j) is inapplicable" and the court may impose "a lesser included, uncharged enhancement under a law other than section 12022.53" if the

---

[8] Section 12022.53, subdivision (j) states in relevant part: "When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."

[9] Here, we continue to reject Williams's argument that his forfeiture of this issue below should be waived for ineffective assistance of counsel, but for a different reason. Acknowledging his criminal history, Williams's trial counsel specifically requested a six-year sentence in the statement in mitigation filed prior to sentencing. Substitution of the lesser section 12022.5 enhancement would not have allowed the trial court to reach Williams's requested result without granting the motion to strike the prior strike conviction—a sentencing choice that was unlikely due to Williams's criminal history. The record reveals a strategic choice for Williams's failure to argue for substitution of the lesser enhancement in the trial court.

enhancement "is supported by facts that have been alleged and found true." (*People v. McDavid*, *supra*, 15 Cal.5th at p. 1030.) *McDavid* described *Tirado* as "affirm[ing] the general rule that when an adjudicated enhancement has been dismissed, 'imposition of an uncharged enhancement is permitted so long as the facts supporting its imposition are alleged and found true,'" and "recogniz[ing] that a court's discretion to impose a lesser included, uncharged enhancement may be restricted by statute." (*McDavid*, at p. 1025.)

The Attorney General argues that Williams cited *Tirado* in his statement in mitigation, and the trial court therefore was presumably aware of its discretion to impose lesser enhancements. In reply, Williams points out that the presumption that a trial court has followed established law does not apply where the law in question was uncertain when the lower court acted, citing *People v. Jeffers* (1987) 43 Cal.3d 984, 1000 (*Jeffers*). Williams argues that the scope of the trial court's discretion to substitute a lesser included enhancement "was unresolved when Williams was sentenced" and we should not "presume[] that the trial court anticipated and then correctly applied the legal principles that would later be announced . . . in *McDavid* and *Walker*."

We find *Jeffers* distinguishable. In *Jeffers*, the Court of Appeal construed a former version of section 1203.066, subdivision (c)(1) to prohibit a grant of probation because the defendant was not a member of the victim's household at the time of sentencing. (*Jeffers*, *supra*, 43 Cal.3d at p. 991.) The trial court had denied probation, apparently believing the evidence would not permit a finding that the defendant was part of the household at the relevant time. (*Id.* at pp. 991, 1001.) In so doing, the trial court stated, "'but for the legislative prohibition I think this could clearly be an appropriate case for probation.' . . . '. . . Lives are truly being shattered

unnecessarily, but I don't make the law.' " (*Id.* at p. 991.)  The Supreme Court held the statute referred to the victim's household at the time of the offense rather than the time of sentencing.  (*Id.* at p. 1000.)  It concluded that the evidence on the household's composition at the time of the offense was inconclusive, and the trial court could have found probation eligibility under this construction of statute.  (*Ibid.*)  Considering "the ambiguity of the statutory language in question, and the lack of any authoritative construction," it found "a substantial likelihood that the trial court relied on an incorrect interpretation" of the statute, confirmed by the court's remark "that it was 'incapable totally' of finding eligibility" for probation.  (*Id.* at p. 1001.)

By contrast, at the time of sentencing in this case there were three "authoritative constructions" of the statutes at issue—*Fuller*, *Johnson*, and *Lewis*.[10]  *Fuller* and *Johnson*, both of which favored Williams's current position, were decided months before the sentencing hearing.  Unlike the situation in *Jeffers*, the trial court's sentencing comments expressly recognized it had the authority to strike the section 12022.53 enhancement in the interests of justice, and in no way indicated that it perceived subdivision (j) as a barrier to a sentencing choice that it otherwise wished to make.  We may not presume error from a silent record.  (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

---

[10] Review had not yet been granted in either *Johnson* or *Lewis*, so both were fully citable for their precedential effect.  Although review had been granted in *Fuller* a month prior to the sentencing hearing, the Supreme Court's order granting review did not alter the trial court's ability to cite it for persuasive value.  (See Cal. Rules of Court, rule 8.1115(e)(1) [permitting citation for potentially persuasive value while case pending review unless otherwise ordered by the Supreme Court].)

### 3.    Remand for Resentencing Is Not Required

Where the trial court fails to recognize the full scope of its discretion, " 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar*, *supra*, 15 Cal.5th at p. 424.)

Here, the trial court was clearly aware of its discretion to strike the section 12022.53 allegation in its entirety and expressly found that it would not be in the interests of justice to strike the allegation.  Substituting a lesser included section 12022.5 enhancement would have permitted the court to select from a triad of three, four, or 10 years, resulting in an aggregate sentence of 13, 14, or 20 years.[11]  Williams is currently sentenced to 20 years, and there is no reason to think the court would strike one enhancement and substitute another just to impose the same sentence.  Had the trial court believed that an aggregate sentence of 13 years was the appropriate punishment for Williams's conduct, it could have chosen that sentence without substitution of the lesser enhancement by imposing a lower term sentence of three years for carjacking, striking Williams's prior strike, and imposing sentence on the 10-year section 12022.53 enhancement.  It chose not to do so.  Similarly, had the trial court chosen to strike the prior conviction, sentence Williams to the middle term of five years for carjacking, and impose the 10-year section 12022.53 enhancement, it could have achieved an aggregate sentence of 15 years in prison.

---

[11] These aggregate sentences result from doubling the five-year middle term for carjacking and adding three, four, or 10 years for the substituted enhancement.

In declining to strike Williams's prior strike, the court applied the same "furtherance of justice" standard that it would have applied in declining to strike the firearm enhancement and impose a lesser one. (See § 12022.53, subd. (h).) And the decisions would have essentially the same result: a 20-year aggregate sentence versus a 15-year or lower aggregate sentence. The trial court's finding that the interests of justice did not support striking the section 12022.53 enhancement, combined with its choices to decline existing options in favor of a 20-year aggregate sentence, clearly indicate that it would not have chosen to substitute a lesser firearm enhancement even had *McDavid* been decided prior to Williams's sentencing.

### III.   DISPOSITION

The judgment is affirmed.


HILL, J.*


WE CONCUR:


BANKE, ACTING P. J.


LANGHORNE WILSON, J.

---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.